UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                    :
FOREST L. FATE, SR.,                                  :
                              Plaintiff,   :
                                                    :      11 Civ. 6838 (JPO)
                -against-                         :
                                                    :      MEMORANDUM
VILLAGE OF SPRING VALLEY, et al.,        :      AND ORDER
                              Defendants.  :
                                                   :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Defendants have filed objections to Magistrate Judge Peck's order precluding the expert report and testimony of their proposed expert, Michael Brave. For the reasons that follow, Defendants' objections are overruled in part and sustained in part. Familiarity with the procedural background of this case and Defendants' proposed expert report is assumed.

**I.    Legal Standard**

      Federal Rule of Evidence 702(a) requires that a proposed expert witness be qualified on the basis of "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."

      "Under Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), district courts are assigned a critical gatekeeping role at the boundary between real science and junk science." *Davis v. Carroll*, No. 09 Civ. 1088, 2013 WL 1285272, at *19 (S.D.N.Y. Mar. 29, 2013). The first question is "whether the expert has sufficient qualifications to testify." *Humphrey v. Diamant Boart, Inc.*, 556 F. Supp. 2d 167, 174 (E.D.N.Y. 2008) (citation omitted). "Specifically, under Rule 702, the Court must determine whether the expert is qualified 'by knowledge, skill, experience, training, or education.' A court should look at the totality of the

witness' qualifications in making this assessment." *Hollman v. Taser Int'l Inc.*, No. 06 Civ. 3588, 2013 WL 864538, at *7 (E.D.N.Y. Mar. 8, 2013) (quotation marks and citations omitted).

If an expert is deemed qualified, the next question is "whether the proffered testimony has a sufficiently reliable foundation." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (citations omitted). "In this inquiry, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony 'is the product of reliable principles and methods'; and (3) that 'the witness has applied the principles and methods reliably to the facts of the case.'" *Id.* (quoting Fed. R. Evid. 702). With respect to the reliability of "principles and methods,"

> [t]he Supreme Court has identified a number of factors bearing on reliability that district courts may consider, such as (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.

*Id.* at 266 (quotation marks and internal citations omitted). "These factors do not constitute, however, a definitive checklist or test. Rather, [t]he inquiry envisioned by Rule 702 is . . . a flexible one." *Id.* Expert testimony must also be relevant under Rule 401 and must not be unfairly prejudicial under Rule 403. *See Nat'l Envelope Corp. v. Am. Pad & Paper Co. of Delaware, Inc.*, No. 06 Civ. 12988, 2009 WL 5173920, at *2 (S.D.N.Y. Dec. 30, 2009).

Sometimes, expert testimony does not rest on traditional scientific methods. In such cases, where a proposed expert witness bases her testimony on practical experience rather than scientific analysis, courts recognize that "[e]xperts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-49 (1999) (citing Hand,

*Historical and Practical Considerations Regarding Expert Testimony*, 15 Harv. L.Rev. 40, 54 (1901)).  Thus, "the *Daubert* factors do not all necessarily apply even in every instance in which reliability of scientific testimony is challenged, and in many cases, the reliability inquiry may instead focus upon personal knowledge and experience of the expert."  *Bah v. Nordson Corp.*, No. 00 Civ. 9060, 2005 WL 1813023, at *7 (S.D.N.Y. Aug. 1, 2005) (quotation marks and citations omitted).  When an expert is introduced under *Kumho Tire*, however, district courts must still exercise the gatekeeping function mandated by *Daubert*.  *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 579 (S.D.N.Y. 2007).  Accordingly, proponents of expert testimony who rely on *Kumho Tire* must still reckon with the rule that "the basic requirements of reliability—as they are now articulated in Rule 702—apply across the board to all expert testimony."  *United States v. Glynn*, 578 F. Supp. 2d 567, 570 (S.D.N.Y. 2008).

Although the Second Circuit applies a "presumption of admissibility of evidence," *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995), Rule 702 mandates that experts "stay within the reasonable confines of [their] subject area, and cannot render expert opinion on an entirely different field or discipline."  *Lappe v. Am. Honda Motor Co., Inc.*, 857 F. Supp. 222, 227 (N.D.N.Y. 1994), *aff'd sub nom. Lappe v. Honda Motor Co. Ltd. of Japan*, 101 F.3d 682 (2d Cir. 1996) (citation omitted).  "In short, where an expert is admitted under Rule 702 and then purports to offer opinions beyond the scope of his expertise, courts strike the extraneous testimony, as the admission of an expert does not provide that individual with *carte blanche* to opine on every issue in the case."  *Davis*, 2013 WL 1285272, at *20.  This includes any effort by the expert to usurp "either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it," as well any "testimony on issues of law."  *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *see also United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury

what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." (emphasis in original)).

Ultimately, these broad standards must be tailored to unique circumstances. *See Dev. Specialists, Inc. v. Weiser Realty Advisors LLC*, No. 09 Civ. 4084, 2012 WL 242835, at *8 (S.D.N.Y. Jan. 24, 2012) ("The reliability inquiry is context-specific, and the question before the Court is not the reasonableness [of the expert's methodology] *in general*, but rather the reasonableness of using such an approach . . . to draw a conclusion regarding *the particular matter to which the expert testimony was directly relevant*." (quotation marks and citations omitted)) (emphasis in original). To that end, district courts enjoy broad discretion "in determining what method is appropriate for evaluating reliability under the circumstances of each case." *Amorgianos*, 303 F.3d at 265. If a court concludes that an expert opinion "is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Id.* at 266.

An expert's proponent bears the burden of satisfying these requirements. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). Specifically, the proponent of the expert testimony must prove by a preponderance of the evidence that it is reliable. *Daubert*, 509 U.S. at 592 n.10.

## II.   Application[1]

---

[1] Plaintiff has moved to strike the expert report on the ground that it was served in an untimely fashion. Given conflicting evidence about when the report was mailed by Defendants and received by Plaintiff, the absence of any prejudice to Plaintiff from this delay, Defendants' apparent good faith, and the fact that the Court will require a new expert report, that motion is denied. Plaintiff has also moved under Federal Rule of Civil Procedure 26(a)(2)(B)(v), which provides that an expert witness report must contain "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Plaintiff has not alleged a violation of the letter of this rule; rather, Plaintiff alleges a violation of its spirit. Specifically, Plaintiff argues that Brave has failed to describe his testimony in the listed cases, failed to describe whether his expert report was deemed admissible in each of these cases, and has omitted several cases in which he served as a consultant. Defendants have clarified some of this confusion. Plaintiff has also achieved some clarity by conducting research into Brave's

With respect to Plaintiff's excessive force claim, the question before the jury will be whether Defendants' use of force against Plaintiff was objectively unreasonable in light of the facts and circumstances known to Defendants at the time of the incident. *See Usavage v. Port Auth. of New York & New Jersey*, No. 10 Civ. 8219, 2013 WL 1197774, at *11 (S.D.N.Y. Mar. 26, 2013). Defendants have submitted an expert report from Michael Brave ("Brave Report"). The Brave Report is more than 300 pages long and mixes Brave's expert conclusions with a wide array of studies, manuals, and extraneous material. Much of this material must be stricken, but certain portions of it are admissible. Rather than parse this behemoth of a report page by page, the Court will explain in general terms which portions must be stricken and require Defendants to submit a new proposed expert report in compliance with this opinion.

A.  **Legal Conclusions: Inadmissible**

The Brave Report is shot through with legal conclusions. Indeed, the very first "general opinion" asserts that "[a]t no time did [Defendants] misuse their government endowed power or authority," noting that the "primary purpose of the Federal Civil Rights Act of 1871 (and its current rendition, including 42 U.S.C. Section 1983) was to provide a remedy for persons who had been victims of government agents misusing their government power and authority." Brave goes on to opine about aspects of Fourth Amendment law and several Supreme Court opinions, such as *Brower v. Cnty. of Inyo*, 489 U.S. 593 (1989), and *Scott v. Harris*, 550 U.S. 372 (2007), to describe the "perspective" from which officers' actions "are to be judged," and to describe the reasonableness of the officers' actions. Like prior efforts by Brave to instruct the judge and jury on legal issues, this testimony is stricken in its entirety. *See Jarrow v. Cupit*, No. 99 Civ. 3539, 2000 WL 1537989, at *1 (E.D. La. Oct. 17, 2000) (noting that a report submitted by Brave

---

testimony and will be free to question Brave about his previous testimony at a deposition. In light of these considerations, Plaintiff's motion to strike under Rule 26 is denied.

"consists of various dissertations on the law pertaining to civil rights litigation," and that these "dissertations are then followed by his application of that law to the facts of this case, and by his conclusion that Defendants did not violate Plaintiffs' constitutional rights").  Brave may not offer expert testimony about the law of excessive force or about Defendants' compliance with that law in the course of events giving rise to this case.  *See Duncan*, 42 F.3d at 101; *see also Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) (noting that an expert may not present a "summation from the witness stand").

      **B.**    **Testimony About Tasers:  Inadmissible**

The Brave Report contains testimony on how tasers work, the effects of tasing in general, and the nature and potential effects of certain taser modes.  Brave offers this testimony on the basis of experience as a "Master Instructor" for Taser International, Inc. (a qualification listed under the general umbrella of his duties as legal counsel to Taser), as the Director of Law Enforcement and Security Consulting at Surveillance Strategies, LLC, and as the President and Director of Training for the International Force Institute.  He adds that he has reviewed studies on the use and operation of tasers and that he has written articles on the use of force.

However, in support of his claims about the benefits and risks of tasers—principally contained in pages 14-18 of the Brave Report—Brave offers no reference to his experience *with tasers*.  Nor does he indicate any background in electrical engineering, medicine, or other related disciplines that would qualify him as an expert in the mechanics, operation, or potential physical effects of tasers.  Brave is not an academic and has neither studied nor conducted published research on these aspects of tasers.  Rather, in significant part, the Brave Report does little more than purport to summarize in general terms what Brave characterizes as the "conclusions" of certain cherry-picked studies and reports.  Yet even here, the bulk of Brave's claims in the report lack any footnotes or citations, and supposedly rest on his general view of a technical literature.

These deficiencies undermine both the case for Brave's qualifications and the case for reliability; simply put, there is no "method" whose "reliability" can be tested, as Brave has done little more than offer his layman's perspective through a potentially selective and scattershot account of the technical literature that he only occasionally cites in support of his conclusions.

For instance, Brave asserts in his report that "[t]he deployment and use of TASER ECDs has been shown to reduce officers' workers' compensation claims for use-of-force and arrest-related injuries," that "[r]ates of injury from TASER ECDs is comparable to, or less than, some collegiate contact and exertional sports," that "TASER ECDs have greater accountability features than any other force option," and that "TASER ECDs are the most effective force option in accomplishing intended effects for U.S. law enforcement." None of these sweeping claims is accompanied by a citation or justified in the report.[2] By the same token, an expert is not considered qualified because his or her report contains seemingly supportive quotations plucked from studies performed by proper experts; thus, Brave's decision to refer at various points to what he styles as a "Brief Outline of Partial Selected CEW Research and Information," or to other excerpts from studies and self-created compilations of academic "conclusions," does not qualify him as an expert or qualify as a sufficiently reliable methodology. The point applies *a fortiori* to conclusions that lack any citations at all, such as Brave's unsupported assertions about the effects of "Drive stun mode" on page 16, including this mode's inability to cause falls or full body pain. At most, he could testify to his limited personal experience of what effects a taser might cause, but the expert report does not provide any such proposed testimony and does not indicate what specific experience, if any, could render him qualified to provide such testimony.

---

[2] Brave has attached hundreds of pages of studies to this report, yet does not provide footnotes or cross-references for any of these claims. To the extent that those studies may contain data supportive of his conclusion, Brave has failed to identify those connections or provide a sufficient basis for his conclusion for the Court to deem him "qualified" or his conclusions "reliable."

Thus, even though expert testimony about the operation and effects of tasers could prove helpful to a jury, s*ee, e.g.*, *Cook v. Riley*, No. 11 Civ. 24, 2012 WL 2280619, at *3 (M.D.N.C. June 18, 2012) ("[A]s Plaintiffs have argued, a TASER represents a more specialized tool than a club (or perhaps even a gun) and thus Mr. Cloutier may offer information about TASERs themselves, including how they work and what kind of effect they have on a subject, that the trial judge deems helpful to the jury."); *Holman v. Hensler*, No. 08 Civ. 254, 2010 WL 60908, at *2 n.2 (N.D. Ind. Jan. 7, 2010) ("Arguably, the use and effect of tasing is not likely within the realm of most jurors' common experiences or observations." (citations omitted)), Brave is not qualified to offer such testimony and has employed a decidedly unreliable methodology while generating his proposed conclusions.  These deficiencies rise above mere fodder for cross-examination and collide with the bar imposed by *Daubert*.  Further, to the extent that Defendants wish to introduce such testimony, they can elicit some of it from the defendant police officers who allegedly tased Plaintiff.  Accordingly, this testimony must be stricken.

So too Brave's proposed testimony on the effects of the tasing on Plaintiff.  Brave is not a physician, does not have any qualifications entitling him to opine on the immediate or long-term medical effects of the disputed tasing in this case, and was not present at the time of the events in question.  He could do little more than parrot and register his speculative agreement with testimony provided by the officers who witnessed the tasing—adding nothing new or relevant.  Accordingly, any testimony in which Brave opines on how the use of a taser in this case affected Plaintiff and on the potential health consequences of that use of a taser is hereby stricken.

      **C.**    **Testimony About Police Practices:  Partly Admissible, Partly Inadmissible**

In certain circumstances, federal courts have allowed expert testimony on whether police procedures or actions are consistent with generally accepted police practices.  *See, e.g.*, *Cerbelli v. City of New York*, No. 99 Civ. 6846, 2006 WL 2792755, at *8 (E.D.N.Y. Sept. 27, 2006)

("Courts typically admit police expert testimony, based solely on the expert's professional experience, where it is offered to aid the jury's understanding of an area not within the experience of the average juror."); *Valentin v. New York City*, No. 94 Civ. 3911, 1997 WL 33323099, at *25 (E.D.N.Y. Sept. 9, 1997) (allowing an expert to "opine on whether specific procedures or actions are consistent with generally accepted police practices"). Indeed, some courts have allowed such testimony in the specific context of electronic weapons. *See Hollman v. Taser Int'l Inc.*, No. 06 Civ. 3588, 2013 WL 864538, at *9 (E.D.N.Y. Mar. 8, 2013) (allowing a former NYPD captain who was "widely read" on the subject, and who attended training courses regarding use of electronic weapons, to offer expert testimony on police practices); *Bonner v. Normandy Park*, No. 07 Civ. 962, 2008 WL 4766822, at *3-4 (W.D. Wash. Oct. 29, 2008) (allowing expert testimony on whether use of a taser under particular circumstances constituted excessive force under standard police practices); *Martin v. Phillips*, No. 05 Civ. 881, 2007 WL 4800657, at *2 (S.D. Ill. Nov. 5, 2007) ("The Court will [allow testimony] concerning when it is proper to use a Taser. This is a matter that the average juror would need help with. For instance, a Taser might be more appropriate than a night-stick or less appropriate than a choke-hold. Expert testimony will be helpful to the jury in making such judgments.").

By virtue of his substantial background in law enforcement and training in the use of non-lethal force, Brave is qualified to offer expert testimony on whether the use of force against Plaintiff was unreasonable when set against standard police practices. His opinions are also reliable by virtue of his experience, which as to this aspect of Brave's proposed expert testimony satisfies *Kumho Tire*. In offering such testimony, Brave may describe in a limited fashion the differences between taser modes and why one or the other might be preferred by police under certain circumstances, subject to the limits on taser-related testimony imposed *supra*.

Brave may not, however, offer testimony about what he believes actually happened or about the credibility of any witness.  His expert testimony on the reasonableness of the police practices in this case must be expressly characterized as based on the assumption that certain facts are found to be true; it cannot rest on implicit credibility determinations.  Further, Brave may not offer legal testimony.  He may not testify that the defendant officers acted in accord with the standard of reasonableness imposed by the Fourth Amendment, nor may he assert in his testimony that actions deemed reasonable when measured against standard police practices are "reasonable" as a matter of constitutional law.  Finally, he may not offer such manifestly unhelpful testimony as his assertions in the Brave Report that law enforcement officers "are not psychic and cannot foretell the future."  To the extent that Brave offers expert testimony on police practices, it must be based on his experience, helpful to the jury, more probative than prejudicial, and free of legal conclusions or factual determinations.  The Brave Report does not currently satisfy those requirements, but it is possible that a revised report on these issues could do so.

> D. **Testimony About Municipal Policy:  Inadmissible Subject to Dismissal by Plaintiff of *Monell* Claims Against the Village of Spring Valley**

Plaintiff appears to have stipulated to dismissal of his *Monell* claims, but Defendants dispute whether Plaintiff has done so.  All parts of the Brave Report addressing municipal policy are hereby stricken as irrelevant, subject to confirmation that Plaintiff has dismissed his *Monell* claims.  If Plaintiff declines to do so, the Court will revisit this ruling.

> E. **Testimony About How Plaintiff "Should Have" Behaved:  Inadmissible**

Brave offers proposed testimony in which he purports to describe Plaintiff's legal duties and to rebuke Plaintiff for failing to act appropriately.  As part of his expert testimony on police practices, Brave may offer his opinion on how an officer following standard procedures should

have responded to someone behaving in the same manner as Plaintiff (assuming certain facts to be true), but all other testimony about Plaintiff's asserted "duty to comply with the law" and failure to comply with this duty is hereby stricken on grounds of relevance and prejudice.

### III.     Conclusion

For the foregoing reasons, Defendants' objections to Magistrate Judge Peck's ruling on the admissibility of the Brave Report are overruled in part and sustained in part.  The Brave Report is stricken to the extent it is inconsistent with the rulings contained herein.  Defendants may submit a revised expert report at any point within 30 days of the issuance of this Memorandum and Order, in which case Plaintiff will be free to renew any evidentiary objections to Brave's proposed expert testimony.  In the alternative, the parties may jointly agree on a redacted version of the original Brave Report.

SO ORDERED.

Dated: New York, New York
       June 12, 2013

_____
J. PAUL OETKEN
United States District Judge